## A06A0355. JONES v. THE STATE.

(633 SE2d 806)

BARNES, Judge.

Heath Lemuel Jones appeals his convictions for two counts of burglary and two counts of aggravated assault. He contends the evidence is not sufficient to support his convictions, and that the trial court erred by admitting evidence of unreliable identifications, by

denying his motions for a mistrial, by giving an erroneous *Allen* charge and an improper charge on identification, by denying, without a hearing, his motion for a new trial asserting claims of ineffectiveness of counsel because his counsel failed to move to suppress the in-court identifications and neglected Jones's motion for new trial for seven years, by depriving Jones of a "hearing on his motion, and by forcing him to pursue post-conviction remedies while effectively pro se." Jones also contends the trial court erred by ruling on his motion for a new trial without ensuring that he had representation, failing to appoint counsel for more than a year after denying his motion for new trial, and thus depriving Jones of his right to file a motion for reconsideration.

Viewed in the light most favorable to the verdict, the evidence shows that Jones and two friends were playing pool and drinking at a bar when they decided to go riding in Jones's girlfriend's car. During the ride, Jones dropped his two friends at the first victim's home, and then drove to his girlfriend's home. The two friends visited for a while and then the first victim took them back to the bar where they picked up their car.

Jones argued with his girlfriend and, according to Jones, the girlfriend drove Jones out in the country and left him on the side of the road. The girlfriend testified, however, that he had her drive him to the home of the first victim, because Jones claimed that two men he dropped off there owed him money. Jones told her to drive around for a while and then come back for him. Instead, the girlfriend drove away, came back, and waited in the car while Jones went to the door. Later, she saw a car leave the victim's house with two or three people in it. She fell asleep in the car until the police woke her sometime later. The girlfriend knew the first victim and knew that she took Jones to his house.

When the first victim answered his door, a man the victim later identified as Jones forced his way into the home and attacked him with a box cutter. When the victim attempted to take the box cutter away, Jones hit him in the face with a club. Holding the knife at the victim's throat, Jones demanded money. Jones also sprayed the victim and the house with bleach in an effort to keep the police from trailing him. He also avoided touching anything in the house.

Jones then forced the first victim to take him to the home of the second victim, a friend of the first victim. When they left the first victim's driveway, Jones had the victim flash his headlights at another car, and the other car flashed its lights in return. Jones told the victim that an accomplice was in the car and would harm a child in the house if he did not return in a reasonable time.

At the second victim's home, Jones used the first victim to gain entry. While Jones attacked the second victim, the first victim escaped, went to a neighbor's home, and called the police.

Meanwhile, Jones tried to obtain money and guns from the second victim, and also accosted a woman who was in the house. He repeatedly threatened to kill the second victim and the woman.

As he did at the first house, Jones refused to touch anything and made the victim put money and a car title in his pocket. Also, before he left, he washed the club with dishwasher soap.

After he saw police lights approaching, Jones fled the scene, leaving his club behind. Shortly thereafter, Jones arrived at a nearby convenience store, where a security guard saw him and noted that he was out of breath, his clothes were wet, and he was sweating heavily. The guard was on the lookout for Jones because he had heard about the earlier events on his police scanner and thought the perpetrator might come by the convenience store to get a ride. The security guard saw Jones depart in a car with a man for whom Jones had worked at a fast food restaurant. This man also noted that Jones was sweaty and that he "smelled like bleach." The man took him to the girlfriend's home and left him there.

During the two incidents, Jones did not wear a mask or attempt in any way to disguise his appearance. He spent several minutes at the second victim's home and was with the first victim for over a half hour. Both victims identified Jones as the man who attacked them. The security guard, Jones's former employer, and Jones's girlfriend all identified Jones as the man they saw or helped that night.

Jones testified in his own behalf and denied that he committed these crimes. The prosecution presented no forensic evidence connecting Jones to the crimes and Jones's fingerprints were not found on any of the items he handled. Nevertheless, the jury convicted him, and, after an unusual delay, this appeal followed.

1. Jones contends the evidence is not sufficient to sustain his convictions. When this court reviews the sufficiency of evidence, "the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Dean v. State*, 273 Ga. 806, 806-807 (1) (546 SE2d 499) (2001). We review the evidence in the light most favorable to the verdict, giving deference to the jury's determination as to the proper weight and credibility to be given. Id. at 807 (1). It is the function of the jury to assess the credibility of the witnesses, to resolve any conflicting evidence, and to determine the facts, not an appellate court. *Butler v. State*, 273 Ga. 380, 382 (1) (541 SE2d 653) (2001). If competent evidence exists, though contradicted, to support the fact necessary to prove the State's

case, we will not reverse the jury's verdict. *Childress v. State*, 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001).

Jones's argument is that his conviction rests upon his questionable identification by the two victims and is not supported by the evidence. Although the first victim did identify Jones's photograph when it alone was presented to him, this victim also testified that his identification in court was the result of his observation of Jones for over 30 minutes in his well-lighted home during the burglary. In the same manner, the second victim testified that, while he saw Jones at his arraignment, his in-court identification was the result of his observation of him during the crime. Additionally, Jones's girlfriend and his former employer identified Jones and the girlfriend testified that she took him to the home of the first victim. The former employer also testified that Jones smelled of bleach when he was with him that night.

Accordingly, even though Jones denied he committed these crimes, the evidence was sufficient for any rational trier of fact to have found Jones guilty beyond a reasonable doubt. Therefore, the trial court did not err by denying Jones's motion for a directed verdict of acquittal or his motion for a new trial.

2. Although Jones seeks to challenge his identification by the victims as a separate issue, this argument merely "go[es] to the weight and credit to be given the evidence by the trier of fact and not to the sufficiency of the evidence. Whether the [victims were] credible and whether [their testimony] should [have been credited] are questions for the jury." (Citations omitted.) *Willis v. State*, 241 Ga. App. 813, 814 (1) (527 SE2d 895) (2000). Under the circumstances, the evidence was sufficient to sustain the jury's verdict. *Reeves v. State*, 244 Ga. App. 15, 18 (1) (c) (534 SE2d 179) (2000).

Further, Jones did not move to suppress the evidence concerning his identification by the two victims or object to their testimony. Thus, any error concerning the admissibility of that evidence was waived.

3. Jones alleges that the trial court erred by denying his motions for a mistrial based upon the prosecution improperly injecting into evidence that Jones had been in a youth home, that he was on probation, and that the sheriff obtained his photograph from another police agency. The first motion was based upon a witness's testimony that he met Jones in a particular youth home, referred to the youth home two other times, and said that Jones was on probation. The motion was denied. Later, a deputy testified that he may have contacted other "authorities" about a photograph of Jones and that they received a photograph of Jones from a sheriff's department. Jones again moved for a mistrial, but the motion was denied.

Review of the transcript shows that both motions were untimely. On neither occasion did Jones promptly move for a mistrial. Instead,

the record shows that he waited until the witnesses were finished testifying before making his motion. A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it. *Peoples v. State*, 184 Ga. App. 439, 440 (2) (361 SE2d 848) (1987).

"To preserve a motion for mistrial for appellate review, the motion must be made contemporaneously with the objectionable testimony. [Cits.]" *Gilliam v. State*, 240 Ga. App. 158, 159 (1) (522 SE2d 766) (1999). Therefore, Jones's motions for mistrial were not timely and review of their denial was waived because they were not made contemporaneously with the allegedly objectionable testimony.

4. Jones contends the trial court erred by giving an improper *Allen* charge and also erred by improperly charging the jury that they could take into consideration the degree of an identifying witness's certainty when assessing an identification. See *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005). Pretermitting whether these charges were erroneous, these issues are not properly before us because the defense counsel waived any error in the charge by stating that she had no objections when the trial court inquired whether the defense had any objections to the charge. *Palmer v. State*, 270 Ga. 278, 279 (2) (507 SE2d 755) (1998).

Also, after the first and third time the trial court recharged the jury, the trial court asked if the defense had any objections and each time the defense said no. After the second recharge, Jones made no objection, nor did he ask for any further clarification. Therefore, this issue was waived. See *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980). "Failure to object to a jury charge in a criminal case constitutes a waiver except where, under OCGA § 5-5-24 (c), there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made or not." (Citations omitted.) *Medina v. State*, 234 Ga. App. 13, 15 (2) (505 SE2d 558) (1998). We held in *Medina* that

> [i]n order to satisfy this standard, appellant must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. Nothing is presented for consideration on appeal unless a gross miscarriage of justice attributable to the jury charge is about to result.

(Citations and punctuation omitted.) Id. Here, we find no substantial error in the court's jury charge which would require our review under OCGA § 5-5-24 (c). The court's instruction did not deprive Jones of a fair trial.

5. Jones also contends the trial court erred by denying his motion for new trial asserting that his defense counsel was ineffective and by denying this motion without a hearing. He contends counsel was ineffective because she did not object to or move to suppress the identification evidence and essentially abandoned him after filing a motion for a new trial and an amendment to that motion.

Consideration of these alleged errors is hampered by the way this case has proceeded after Jones's conviction. The record shows that Jones's sentence was entered on March 6, 1997, his defense counsel filed a timely motion for a new trial on April 3, 1997, a first amendment to the motion was filed on November 6, 1997, Jones, pro se, filed a second amendment to the motion on May 24, 2002, and the trial court finally denied the motion, without a hearing, on March 19, 2003, six years after Jones was sentenced. Unfortunately, however, that did not end the delay because the record remained in the trial court for over two years until it was docketed in this court on October 5, 2005. Moreover, as best as we can determine, Jones was without representation by counsel for most of this time after November 6, 1997.

In several cases recently, this court has noted this problem. See, e.g., *Currington v. State*, 270 Ga. App. 381, 387 (3) (606 SE2d 619) (2004) (ten years from sentencing to hearing); *Reynolds v. State*, 267 Ga. App. 148, 150-151 (1) (598 SE2d 868) (2004) (thirteen years from sentencing to motion hearing); *Spradlin v. State*, 262 Ga. App. 897, 899-900 (3) (587 SE2d 155) (2003) (twelve years after sentencing); *Stone v. State*, 257 Ga. App. 306, 306-307 (570 SE2d 715) (2002) (nine years and seven months after sentencing). Sadly, this is not an exhaustive list. In *Stone v. State*, supra, 257 Ga. App. at 307, we noted that the

> courts have a duty to the citizens of this state to oversee the criminal justice system and to ensure that those who are accused of crimes are tried expeditiously, and that their constitutional rights are protected. The delay which has occurred in this case is simply not acceptable. The legislature has provided that a defendant must file a motion for new trial within 30 days of the entry of the judgment on the verdict. This and other statutorily established time limits clearly indicate the intention of the legislature that criminal matters be resolved promptly. Ten years is too long to take to address a motion that must be filed in thirty days. The judicial branch, prosecutors, and the criminal defense bar all have a duty to meet their respective responsibilities in ensuring that criminal cases are promptly resolved.

In this case, six years was too long to rule on Jones's motions and two years was too long to get the record before us. We must point out, however, that Jones has not raised a due process challenge to the post-conviction delay in this appeal and thus we cannot consider that issue. See *Chatman v. Mancill*, 280 Ga. 253, 256-257 (2) (a) (626 SE2d 102) (2006). Instead, Jones challenges the trial court's denial of his motion for new trial because his counsel were ineffective.

Considered on that basis, the record shows that Jones was convicted on February 26, 1997, and sentenced on March 6, 1997. The trial defense counsel filed a motion for new trial asserting the general grounds on April 3, 1997. Although a hearing on this motion was scheduled for November 6, 1997, on that day the defense counsel filed the first amendment to the motion for new trial alleging that the trial court erred by denying Jones's motions for a mistrial, erred by admitting in evidence a "night stick," and erred by denying his motion for a directed verdict of acquittal.

Perhaps because of this amendment, the scheduled hearing was not held, for the next item in the record is a letter from the clerk of court to the district attorney and the defense counsel with a copy to the trial judge, dated July 22, 1998, stating that

> [t]he above referenced case had a Amended Motion for New Trial filed on November 6, 1997. Our normal procedure is to set a case aside until the appeal is sent up to a higher court. After the appeal is mailed we complete our disposition of the case. My office does this to insure that a case being appealed does not fall through the cracks. This letter is to advise you that I am placing the above styled case on the disposed shelf as a final disposition. The transcript will be filed away also. I ask that you be responsible for informing me if the appeal process is resumed at a later date.

No response to this letter is included in the record, and the record does not show that a hearing was scheduled. For the next two years nothing happened in the case, and it appears that, despite the clerk's efforts, the case did fall through the cracks.

In September 2000, Jones wrote the clerk of court and forwarded a motion for appointment of counsel. The letter contains the notation "filed 9/13/00," and the motion[1] is in the record, but does not contain a "file stamp." The motion recites that Jones has attempted to communicate with his trial defense counsel without success and that he had asked her to file an appeal for him, but no appeal has been

---

[1] The motion is not signed, but does contain Jones's hand printed name.

filed. Jones requests that new counsel be appointed for him because he "has been abandon[ed] by his trial attorney." The record does not reflect that any action was taken on the motion.

The next item in the record is a letter from the clerk of court to the court administrator, dated June 11, 2001, advising him that Jones was not represented by counsel. The letter states that the clerk "needed help in getting counsel appointed to cases that Judge Kathy Palmer represented when she was the Public Defender," and asked for assistance in getting counsel appointed. Nothing in the record shows that anything happened as a result of that letter.

Next in the record is a motion by Jones, pro se, filed April 3, 2002, asking for documents and records at government expense. This motion was denied because the trial court stated that Jones's conviction was being directly appealed by his court appointed attorney and presumably counsel had the records Jones requested. Interestingly, the certificate of service of this order shows service upon Jones and the district attorney, but not upon any defense counsel. Further the possibility that Jones was being represented by counsel is contradicted by a letter from the district attorney to the court administrator and the clerk of court stating that "[o]ur file on Heath Lemuel Jones does not reveal any attorney appointment for appellate purposes nor any appellate pleadings."

Nevertheless, the letter is followed by another order stating that "[p]laintiff has previously been sentenced in this court and has filed a petition for a copy of the transcript in his case. He has not shown a need for the requested transcript. He simply requests the document, stating that there is a potential appeal." The order goes on to say that "[i]t has been made apparent that a Motion for New Trial/Appeal has been made on behalf of Petitioner. Therefore, Petitioner's attorney has been or will be provided a copy of the transcript and all related documents." This time the order was only served upon Jones.

On May 24, 2002, a second amendment to the motion for new trial was filed alleging, among other grounds, that the trial defense counsel was ineffective for numerous reasons.[2] This pleading was handwritten and signed by Jones and requested that these "grounds for a new trial be inquired of by the court." The trial court denied the

---

[2] Jones asserted his counsel was ineffective because she failed to file a motion to suppress the in-court identification testimony, failed to request jury instructions "protecting the Fifth Amendment," failed to object to improper charging of the jury, failed to
support defendant in post-conviction remedies, deliberately foregoing direct appeal for four years without client's consent, failed to investigate state's witnesses and physical evidence, failed to produce medical reports, failed to object to improper cross-examination by prosecutor, failed to object to the prosecutor's opening statement, failed to seek severance of charges, failed to request or charge on lesser included offenses, and failed to object to over-prosecution.

motion for new trial and the amendments without a hearing on March 19, 2003. This order was served upon the district attorney, Jones's trial defense counsel, who by this time was a sitting superior court judge, and Jones.

Next, a lay person, pursuant to a power of attorney from Jones, filed a notice of appeal and several pleadings, including a brief in support of appointment of counsel. These pleadings are followed by two letters from Jones to the trial court in October 2004 asking for his appeal to be heard and his motions to be ruled on.

The next items in the record are a letter from an attorney to the clerk of court forwarding various motions, pleadings, and letters from his files. Included in these letters is one from the attorney to Jones, dated October 30, 2001, advising him that the attorney had agreed "at the first of the summer" to prosecute Jones's appeal. The letter recites that he would have a motion for new trial prepared before the end of the year. In February 2002, Jones wrote this attorney expressing his concern that he had heard nothing on his motion for new trial. The record also contains a grievance filed by Jones with the State Bar against this attorney and much correspondence among the Bar, Jones, and the attorney.

Additionally, the record also contains a letter from the trial court to Jones, dated November 1, 2004, stating that the court had received Jones's recent letter "complaining that it had been over seven (7) years and your appeal has not been 'perfected.' I have the file from the clerk's office and copies of the file from [a defense counsel's] office and as soon as I have reviewed them I will take the appropriate action to protect your rights." The letter states that Jones should hear from him within two weeks. This letter is followed by a letter from the judge to the clerk of court, dated November 8, 2004, stating that the court had set a hearing for December 2, 2004, and forwarding an order to produce Jones at the hearing, and an order appointing an "interim counsel" for Jones. Apparently nothing of record took place as a result of this correspondence because the record contains no further mention of the hearing, and shows no pleadings were filed by the interim counsel.

The next matter in the record is a motion filed by Jones entitled "Motion for Instant Hearing to Inquire into the Matter of Appellant Counsel's Negligent [sic] in Perfecting a timely Appeal Has Violated The Due Process Clause of the Fourteenth Amendment to the United States Constitution" and its exhibits. The record does not show that this motion was acted upon.

Then, another appellate counsel apparently was appointed who moved for an out-of-time appeal, which the trial court granted. Thereafter, new appellate counsel filed a notice of appeal without filing a motion for new trial.

As the record on appeal demonstrates, the post-conviction processing of this appeal, if it can be called that, falls far short of that expected in this State. Nevertheless, our law is clear:

> [T]he proceeding in which an out-of-time appeal is sought is the proper time to raise the issue of ineffective assistance of counsel. When an out-of-time appeal is sought by means of a motion in the trial court, allegations of ineffective assistance of counsel are germane only insofar as they involve the denial of the defendant's right to appeal, that being the only issue before the trial court. Should the trial court grant the motion, however, the allegations of ineffectiveness become germane to whatever post-conviction relief is sought. . . . [T]he grant of an out-of-time appeal constitutes permission to pursue appropriate post-conviction remedies, including a motion for new trial. It follows from that holding and from the requirement that a claim of ineffective assistance of counsel be determined by means of an evidentiary hearing at the earliest practicable moment, that a claim of ineffective assistance of counsel may not be asserted in an out-of-time appeal unless appellate counsel pursues a motion for new trial, subsequent to the grant of the out-of-time appeal, in which the issue is raised and resolved by means of an evidentiary hearing.

*Ponder v. State*, 260 Ga. 840, 841-842 (1) (400 SE2d 922) (1991). Accordingly, as new appellate counsel for Jones did not file a motion for new trial asserting that the prior appellate counsel were ineffective, those issues he raised are not properly before us.

Considering the allegations concerning the trial defense counsel's actions during the trial which were considered by the trial court in its order denying Jones's motion for new trial, we find no error on the issues the trial court ruled upon. Under our law,

> [t]o prevail on a claim of ineffective assistance, a defendant must show that counsel rendered deficient performance and that actual prejudice resulted. Counsel are strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and counsel's performance is evaluated without reference to hindsight. A petitioner has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. Ineffective assistance claims are mixed questions of law and fact. We accept the [trial] court's findings of fact unless clearly erroneous and independently apply the law to those facts.

(Citations and punctuation omitted.) *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). Further, when considering a claim of ineffectiveness, a critical distinction exists between inadequate preparation and unwise trial strategy. Especially in matters of trial tactics, a Sixth Amendment claim cannot be judged by hindsight or result. *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

A strong presumption exists that Jones's trial counsel's performance fell within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy, and matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel, *Smith v. State*, 234 Ga. App. 586, 589 (1) (a) (ii) (506 SE2d 406) (1998). Without the trial defense counsel's testimony, Jones has not met his burden of showing that the failure to object to this testimony constitutes ineffective assistance of counsel. See *Hines v. State*, 248 Ga. App. 752, 756 (3) (548 SE2d 642) (2001).

Because the claim of ineffectiveness of counsel related to matters outside of the record, such as trial strategy, the trial defense counsel's testimony generally is needed to evaluate the claim. See *Dawson v. State*, 258 Ga. 380, 381 (3) (369 SE2d 897) (1988). Here, Jones raised the issue in the trial court, but did not seek an evidentiary hearing. "The importance of the distinction is that failure to raise the issue at all in the trial court results in no appellate consideration of the claim of ineffectiveness, while the failure to seek an evidentiary hearing results in appellate consideration of the claim of ineffectiveness based solely on the record at trial. [Cit.]" *Wilson v. State*, 277 Ga. 195, 198 (2) (586 SE2d 669) (2003).

The trial court, however, did not rule upon all the grounds of ineffectiveness raised by Jones in his amended motion. In particular, the court did not address Jones's allegation that his defense counsel failed to "support defendant in post-conviction remedies, deliberately foregoing direct appeal for four years without client's consent." This ground was not ruled upon by the trial court and is closely connected to Jones's repeated effort to obtain appellate counsel. Therefore, we must remand the case to the trial court to consider and rule upon this ground for Jones's motion for new trial. In so doing, the trial court should also address why Jones was not appointed appellate counsel earlier and whether this failure deprived him of effective appellate counsel.

Further, Jones had a right to a hearing on his motion for new trial, *Shockley v. State*, 230 Ga. 869 (199 SE2d 791) (1973), but the trial court is not required to hold a hearing if one is not requested. *Wilkins v. State*, 220 Ga. App. 516, 518 (3) (469 SE2d 695) (1996). In this case, however, a hearing on the motion was scheduled and Jones took no action to waive or abandon the hearing. Therefore, he "was entitled to rely on this fact and was relieved of any additional need to formally request a motion hearing." *Cooper v. State*, 249 Ga. App. 881, 882 (549 SE2d 829) (2001). Under these circumstances, the trial court's failure to conduct a hearing on Jones's motion for new trial was error. We vacate the trial court's order and remand this case for a hearing on the merits of Jones's motion for new trial, including the allegations about lack of effective appellate representation that Jones raised in his amendment to his motion for new trial.

Accordingly, although Jones's convictions are affirmed, the trial court's ruling on his motion for new trial is vacated and the case is remanded for a hearing on the motion.

*Judgment affirmed, ruling on motion for new trial vacated and case remanded with direction. Andrews, P. J., concurs. Bernes, J., concurs in judgment only.*

DECIDED JULY 6, 2006.

*John K. Gross*, for appellant.
*Steven Askew, District Attorney*, for appellee.